569 A.2d 1038

**Nicholas DUGAN, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (FULLER COMPANY OF CATASAUQUA), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 9, 1989.

Decided Feb. 8, 1990.

220

Jack B. Katz, Sagot, Jennings & Sigmond, Philadelphia, for petitioner.

Thomas A. Wallitsch, Allentown, for respondent, Fuller Co. of Catasauqua.

Before CRUMLISH, Jr., President Judge, and PALLADINO and SMITH, JJ.

PALLADINO, Judge.

Nicholas Dugan (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board), which affirmed a referee's order granting compensation beginning on the day he notified his employer, the Fuller Company of Catasauqua (Fuller), of an injury and ending on the day he retired.

On September 11, 1984, Claimant was assigned the task of clearing pieces of metal from a shop floor. After three hours of work, Claimant felt tightness and burning in his upper chest and upper abdomen. The pain gradually increased and as a result Claimant left work early. Later that night, Claimant was taken to a hospital where he was diagnosed as having suffered a myocardial infarction.

Claimant filed a claim petition for workmen's compensation benefits, which Fuller contested. A referee held hearings and after closing the record reopened it to schedule an additional hearing because in the interim Claimant retired. At this hearing, Claimant testified as follows:

BY THE REFEREE

[Question] Q [A]re you receiving Social Security retirement benefits?

[Answer] A Now am I receiving?

Q Yes.

A Yes.

Q Since when?

A Since I was 65. I think that's what you are talking about.

Q And your date of birth is May 24, 1921?

A Yes.

Q Are you attempting to obtain employment, Mr. Dugan?

A No, I am retired.

Transcript of hearing, October 14, 1987, at 14.

The referee found as a fact that Claimant was totally disabled from September 12, 1984 until June 16, 1985. Based on the testimony above, the referee concluded that Claimant "has no intention to resume any type of employment and considers himself retired," [1] as of May 24, 1986. The referee awarded benefits beginning on the day Fuller received notice of an injury and ending on the day Claimant retired.

 Claimant appealed the suspension of benefits to the Board, which affirmed. On appeal to this court, Claimant raises two issues: [2] (1) whether the referee abused his discretion by opening the record for the additional hearing relating to testimony about Claimant's retirement; and (2) whether the referee committed an error of law when he suspended workmen's compensation benefits because he concluded that the Claimant by retiring had removed himself from the labor market.

1. Referee's Decision at 13.

2. Our scope of review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Mackintosh–Hemphill v. Workmen's Compensation Appeal Board (Banicki)*, 116 Pa.Commonwealth Ct. 401, 541 A.2d 1176 (1988).

The first issue was not raised in Claimant's appeal to the Board or in his petition for review filed with this court. Accordingly, he has not preserved this issue for our review. Pa.R.A.P. 1551.

As to the second issue, Claimant argues that when a claimant retires, the employer still carries the burden of proving that there was work available to the claimant prior to his retirement and suspension of compensation. Claimant relies on *Wheeling–Pittsburgh Steel Corp., v. Workmen's Compensation Appeal Board (Smith),* 70 Pa.Commonwealth Ct. 100, 452 A.2d 611 (1982).

■ As a general rule, to suspend benefits because a claimant no longer suffers a loss of earning power caused by an occupational injury, the employer must prove that employment is available to the claimant. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.),* 516 Pa. 240, 532 A.2d 374 (1987). This rule is inapplicable where a claimant states unequivocally that he has no intention of seeking future employment. An employer need not prove the availability of employment, which a claimant has no intention of pursuing.

■ *Wheeling* is inapplicable to the present case. In *Wheeling,* the claimant voluntarily retired. Eleven months later he filed a claim for compensation for an occupational disease. The employer argued that the claimant suffered no disability compensable under The Workmen's Compensation Act (Act) [3] because he was voluntarily retired from his employment when the disability arose. We concluded that this argument conflicted with an occupational disease provision of the Act, which provides in pertinent part:

> [W]henever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last day

**3.** The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

of employment in an occupation or industry to which he was exposed to hazards of such disease.

Section 301 of the Act, 77 P.S. § 411(2). We held that the three hundred week period was adopted for occupational disease claims because:

> [T]he exact time of [an occupational disease's] origin is necessarily obscure and their insidious progress is not revealed until, frequently after a long interval, the disability which they create manifests itself.... [I]t is precisely because such diseases frequently do not manifest themselves until after the employee has, for whatever reason, left the employment that our Legislature has allowed 300 weeks since the last exposure for the disease to be manifest.

*Wheeling*, at 106, 452 A.2d at 614, (citation omitted).

In the present case, the injury which caused Claimant's disability was a myocardial infarction, which is not an occupational disease. The occupational disease provision of the Act which underlies the holding in *Wheeling* is inapplicable to the case at bar. There is no similar statutory period for the discovery of a non-disease injury. Because non-disease injuries are immediately apparent, as was Claimant's injury in the present case, a waiting period for such injuries to be discovered is unnecessary.

A factual difference also renders *Wheeling* inapplicable. In *Wheeling*, the record contained no evidence that the claimant would not seek future employment. The present record contains Claimant's own unequivocal testimony that he is retired and will no longer attempt to obtain employment.

■ The law is settled that for purposes of workmen's compensation, the term disability is synonymous with a "loss of earning power." *Scobbie v. Workmen's Compensation Appeal Board (Greenville Steel Car Company)*, 118 Pa.Commonwealth Ct. 424, 545 A.2d 465 (1988), petitions for allowance of appeal denied, 552 Pa. 606, 562 A.2d 828; 522 Pa. 607, 562 A.2d 829 (1989). Although a claimant

may continue to suffer a work-related physical disability, if that physical disability does not occasion a loss of earnings, then payment of workmen's compensation must be suspended. *Id.* Claimant's loss of earnings was caused by his voluntary retirement and withdrawal from the labor market. Claimant's loss of earnings was not occasioned by his injury. Therefore, we conclude that workmen's compensation benefits were properly suspended.

Accordingly, we affirm.

## ORDER

AND NOW February 8, 1990, the order of the Workmen's Compensation Appeal Board in the above-captioned case is affirmed.