IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edwin Shaffer,                          :
                                        :
                    Petitioner          :
                                        :
              v.                        : No. 936 C.D. 2018
                                        : Submitted: November 16, 2018
Workers' Compensation Appeal            :
Board (Township of Indiana),            :
                                        :
                    Respondent          :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: July 9, 2019


        Edwin Shaffer (Claimant) petitions for review of the June 15, 2018

order of the Workers' Compensation Appeal Board (Board), which affirmed the

decision of a workers' compensation judge (WCJ) suspending Claimant's indemnity

benefits based on Claimant's voluntary withdrawal from the workforce. We affirm.

        Claimant sustained an injury to his right shoulder on May 17, 1992, or

in the course of his employment as a police officer for Indiana Township Police

Department (Employer). Pursuant to a supplemental agreement dated May 4, 1993,

Claimant received weekly benefits of $466.83, beginning on April 3, 1993, based on

an average weekly wage of $700.25.

On April 8, 2016, Employer filed a termination petition alleging that Claimant was fully recovered from the work injury and that he had voluntarily withdrawn from the workforce. Claimant denied the allegations and the matter was assigned to the WCJ.

In support of its termination petition, Employer presented the deposition testimony and report of Steven E. Kann, M.D., a board-certified orthopedic surgeon with a subspecialty of hand, upper extremity, and microsurgery, who conducted an independent medical examination (IME) of Claimant on August 4, 2011. Dr. Kann testified that Claimant provided a history of his work injury and course of his medical treatment. He noted Claimant's work injury, diagnoses, two surgeries, and physical therapy. Claimant reported that he was able to perform most daily activities without difficulty, but he complained of discomfort and pain in his shoulder that interfered with his sleep. Claimant told Dr. Kann that he had not sought treatment for the work injury in the past 16 years. Reproduced Record (R.R.) at 89a.

Dr. Kann testified that his physical examination of Claimant revealed normal rotator cuff strength, some decreased range of motion of his shoulder, and mild pain along his biceps tendon. He testified that, at the time of his 2011 examination, it was his medical opinion that these conditions were not functionally limiting and that Claimant could perform the regular duties of a police officer in a safe and efficient manner. Dr. Kann signed a Return to Work Evaluation releasing Claimant to full duty. R.R. at 92a.

On cross-examination, Dr. Kann testified that the tenderness along Claimant's biceps tendon would not limit his ability to use an assigned duty shotgun. Dr. Kann said he interpreted Claimant's report of mild pain during the Neer and Hawkins tests as indicating mild residual impingement syndrome, explaining that

2

the fact Claimant had not sought medical treatment for 15 or 16 years supported his diagnosis.

Claimant testified before the WCJ on July 25, 2016. Claimant stated that he was assisting ambulance personnel on May 17, 1992, when he sustained an injury to his right shoulder. Thereafter, he required two surgeries: one in April 1993 and another in July 1994. He said he received physical therapy after the second surgery but had not been under a doctor's care for the work injury since 1994 or 1995. According to Claimant, it hurt to move his arms above shoulder level. He said that his shoulder aches when he carries anything but does not otherwise bother him. R.R. at 21a-23a.

Claimant testified that he had submitted a letter to Mitchell Kobal, Employer's manager, advising that he intended to terminate his employment as of March 31, 1996, based on passing his anniversary date and as a result of the permanent injury to his right shoulder. Claimant explained that he was able to accrue service time while he received Heart and Lung[1] and workers' compensation benefits. Claimant, then 79 years old, testified that he would have continued working as long as he was able to perform his duties. "I would have still been working, maybe not today, but after that I would have been, yeah." R.R. at 26a, 28a, 43a.

Claimant acknowledged that he did not look for work following his retirement in March of 1996. When asked why, he candidly explained that he was able to "get by" with his retirement and disability benefits. R.R. at 33a. Claimant stated if he had never injured his shoulder, he would not currently be working as a

---

[1] Claimant received benefits under the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637-638, for a period of time until his injury was determined to be permanent in nature.

3

police officer because he was "getting too old." He admitted that he did not intend to seek other employment elsewhere. R.R. at 33a.

Claimant also submitted the March 15, 1996 deposition testimony of H. Andrew Wissinger, M.D. Dr. Wissinger, who is board-certified in orthopedic surgery and hand surgery, examined Claimant on June 7, 1995, for the purpose of evaluating Claimant's ongoing eligibility for Heart and Lung benefits. Dr. Wissinger testified that Claimant had lost some motion in his shoulder, but the muscles had not deteriorated. He diagnosed Claimant with degenerative arthritis, right acromioclavicular joint, and a rotator cuff tear, both aggravated by the work injury and recovered with impairment; and a rupture of long head right biceps causing no impairment. Dr. Wissinger believed that Claimant would not improve further, and he opined within a reasonable degree of medical certainty that Claimant would not be able to return to his job as a police officer. R.R. at 77a-79a.

Claimant also offered the deposition testimony of Yram Groff, M.D., who is board-certified in orthopedic practice with a subspecialty in sports medicine. Dr. Groff performed an IME of Claimant on August 2, 2016. He testified that he took a history from Claimant, reviewed his medical records, and took x-rays of Claimant's left shoulder. Dr. Groff said Claimant reported pain and sensitivity in his right shoulder, particularly with overhead activity, as well as aches throughout the day and night that occasionally woke him. Dr. Groff testified that Claimant's right shoulder had a droop and that Claimant had a deformity of his biceps consistent with a rupture of the long head of biceps. Dr. Groff concluded that Claimant had a right shoulder rotator cuff tendinopathy – a disease of the tendon itself – as a direct result of the work injury of May 17, 1992. He believed that no further treatment was required or would be helpful. Dr. Groff opined within a reasonable degree of

4

medical certainty that Claimant is not capable of fulfilling the requirements of the position of a police officer. R.R. at 119a, 122a, 134a, 136a-139a.

Notwithstanding, Dr. Groff agreed that the shoulder injury was not totally disabling, but, rather, it was an injury that involved limitations. He explained that Claimant's limitations would not preclude him from doing any work, just certain types of work. He testified that Claimant could perform a more sedentary job involving restricted light-duty work. Dr. Groff noted that Claimant's age was part of the reason he was unable to perform the duties of his previous job. R.R. at 140a-41a, 148a, 154a.

In his July 25, 2017 decision, the WCJ specifically found Claimant to be "extremely credible." He also accepted the opinions of both Dr. Kann and Dr. Groff as credible and largely consistent. Noting that both doctors agreed that Claimant had ongoing right shoulder impingement, the WCJ found that Claimant had not fully recovered from his work-related injuries and denied Employer's termination petition. R.R. at 172a.

However, the WCJ found that Dr. Kann and Dr. Groff also testified that Claimant could perform some level of work. Additionally, the WCJ noted Claimant's testimony that he considered himself retired and was no longer looking for employment. R.R. at 172a. Therefore, the WCJ determined that Claimant had voluntarily removed himself from the workforce and granted a suspension of benefits as of the date of Claimant's testimony. R.R. at 173a.

Claimant appealed to the Board, arguing that the WCJ erred in suspending his benefits because he was forced to withdraw from the workforce due to his work injury. The Board affirmed the WCJ's decision on June 15, 2018, citing,

5

*inter alia*, Claimant's testimony that he had no intention of returning to the workforce.  Claimant then filed a petition for review with this Court.

On appeal,[2] Claimant argues that the WCJ erred in determining that Claimant voluntarily removed himself from the workforce when the record reflected that Claimant's work injury forced him to retire.

Ordinarily, where a claimant has been forced into retirement as a result of a work injury, the claimant may continue to receive workers' compensation benefits.  *Southeastern Pennsylvania Transportation Authority v. Workmen's Compensation Appeal Board* (*Henderson*), 669 A.2d 911, 913 (Pa. 1995).  However, when a claimant voluntarily leaves the labor market, rather than being forced into retirement because of a work injury, the claimant is not entitled to ongoing indemnity benefits and the employer has grounds to seek a suspension.  *Id.*; *Turner v. Workers' Compensation Appeal Board (City of Pittsburgh)*, 78 A.3d 1224, 1228 (Pa. Cmwlth. 2013).

An employer seeking a suspension of benefits based on the claimant's retirement must establish that the claimant has voluntarily withdrawn from the workforce.  The employer must demonstrate, by a totality of the circumstances, that the claimant has chosen not to return to work.  *City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson) (Robinson II)*, 67 A.3d 1194, 1209 (Pa.

---

[2] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether the necessary findings of fact are supported by substantial evidence.  *Keene v. Workers' Compensation Appeal Board (Ogden Corp.)*, 92 A.3d 897, 900 n.3 (Pa. Cmwlth.), *appeal denied* 104 A.3d 6 (Pa. 2014).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion, and a reviewing court must view the evidence in a light favorable to the party that prevailed in front of the WCJ.  *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003).  The pertinent inquiry is whether there is any evidence supporting the WCJ's factual finding.  *Id.*

6

2013). The employer may do so by using such evidence as the claimant's acceptance of a pension, the claimant's own statements relating to voluntary withdrawal from the workforce, and the claimant's efforts or non-efforts to seek employment. *Id.* at 1210; *Turner*, 78 A.3d at 1231.

Once the employer produces sufficient evidence to support a finding that the claimant has voluntarily withdrawn from the workforce, the burden shifts to the claimant to show a compensable loss of earning power. *Robinson II*, 67 A.3d at 1209-1210. The claimant does this by proving either that he was looking for work after retirement or that he was forced out of the labor market because of this work injury. *Id.* at 1209; *Henderson*, 669 A.2d at 913. To establish the latter, a claimant must demonstrate that he is forced out of the entire labor market, not just his pre-injury job. *Day v. Workers' Compensation Appeal Board (City of Pittsburgh)*, 6 A.3d 633, 638 (Pa. Cmwlth. 2010), *appeal denied*, 81 A.3d 79 (Pa. 2013); *Pries v. Workers' Compensation Appeal Board (Verizon Pennsylvania)*, 903 A.2d 136, 143 (Pa. Cmwlth. 2006), *appeal denied*, 923 A.2d 412 (Pa. 2007); *County of Allegheny v. Workers' Compensation Appeal Board (Weis)*, 872 A.2d 263, 265 (Pa. Cmwlth. 2005).

Claimant's arguments on appeal misinterpret *Robinson II* as implicitly modifying a claimant's burden. Specifically, Claimant relies on *Robinson II* to assert that once he proved that his work injury forced him to retire from police work in 1996, the burden shifted to Employer to show that work within his restrictions is available. However, Claimant misconstrues the Supreme Court's opinion.

In *City of Pittsburgh v. Workers' Compensation Appeal Board (Robinson) (Robinson I)*, 4 A.3d 1130 (Pa. Cmwlth 2010) (plurality opinion), this Court stated that "where a claimant voluntarily retires, it is the claimant who bears

7

the burden of showing *either* that her work-related injury has forced her out of the entire workforce *or* that she is looking for work after retirement." *Id.* at 1134 (citing *Henderson*, 669 A.2d at 913, and *Weis*, 872 A.2d at 265) (emphasis in original). Contrary to Claimant's assertions, the Supreme Court did not disturb this analysis in *Robinson II*. Indeed, the Supreme Court identified the issue on appeal by reference to our prior opinion:

> The plurality also recognized that pursuant to *Henderson*, the employer need not prove the availability of suitable work in a circumstance where the claimant voluntarily removes herself from the labor market through retirement. To the contrary, when a claimant has retired, the claimant bears the burden of showing *either that her work-related injury forced her out of the entire workforce*, or that she is seeking employment after retirement. The court identified the relevant inquiry in this case as 'when the burden should shift from an employer to show the availability of suitable work, under the *Kachinski*[3] standard, to a claimant to show that she is still attached to the workforce *or was forced out of the entire workforce by her work-related injury*, under the *Henderson* standard. In other words, when is a claimant 'retired' such that *Henderson* and its progeny apply?'

*Robinson II*, 67 A.3d at 1198 (emphasis added). The Supreme Court expressly acknowledged that a claimant who has voluntarily retired and is not seeking some type of employment must prove that the work injury forced him to withdraw from the *entire* workforce. To the extent Claimant interprets *Robinson II* differently, his arguments necessarily fail.

Upon review, the evidence credited by the WCJ, including the testimony of both medical experts and Claimant's own testimony, supports the

---

[3] *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 532 A.2d 374 (Pa. 1987).

8

WCJ's findings that Claimant was capable of performing some type of work and voluntarily withdrew from the workforce. The burden then shifted to Claimant to prove that he was looking for other employment or that his work injury forced him to withdraw from the entire workforce. Claimant credibly testified that he has no intention of seeking any type of employment. This admission, combined with the credited medical evidence, supports the WCJ's determination that Claimant did not meet his burden to show that he was still seeking employment or that his work injury forced him to withdraw from the labor market. Consequently, the WCJ properly suspended benefits as of the date of the Claimant's testimony, *Day*, 6 A.3d at 642, and the Board did not err in affirming the WCJ's order.

Accordingly, we affirm.

MICHAEL H. WOJCIK, Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edwin Shaffer,                          :
                                        :
                    Petitioner          :
                                        :
          v.                            : No. 936 C.D. 2018
                                        :
Workers' Compensation Appeal            :
Board (Township of Indiana),            :
                                        :
                    Respondent          :


O R D E R


          AND NOW, this 9th day of July, 2019, the order of the Workers'
Compensation Appeal Board, dated June 15, 2018, is AFFIRMED.


                              _____
                              MICHAEL H. WOJCIK, Judge